UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KELVIN BLAYNE SMITH,

    Plaintiff,

Case No. 23-cv-1182-pp

v.

KOHLER COMPANY
and UAW LOCAL 833,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (DKT. NO. 6, 11) AND ALLOWING PLAINTIFF TO FILE SECOND AMENDED COMPLAINT**

On September 7, 2023, the plaintiff—representing himself—filed a complaint alleging that his employer, defendant Kohler Company, religiously discriminated against him by mandating that employees either show proof of receiving the COVID-19 vaccination or take a COVID-19 PCR test on a weekly basis. Dkt. No. 1. On September 27, 2023, the plaintiff filed an amended complaint, which broadly restated the same factual allegations as the original complaint, but also added as a defendant United Autoworkers, Local 833 (UAW) and added a class action claim. Dkt. No. 2. Both Kohler and the UAW have filed motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Dkt. Nos. 6; 11. Because the plaintiff has not stated a claim upon which a federal court can grant relief, the court will grant the defendants' motions to dismiss and order the plaintiff to file a second amended complaint.

I.    **Background**

    A.    Allegations in the Amended Complaint

    The plaintiff styles his amended complaint as a class action. Dkt. No. 2 at 1. He alleges that in November 2021, Kohler informed employees that

1

beginning on January 1, 2022, it would mandate that all employees must provide proof of a COVID-19 vaccination or an approved exemption for religious regions. Id. at ¶1. He alleges that employees with an exemption would have to take regular COVID-19 tests as an alternative to vaccination. Id. The plaintiff asserts that employees who did not comply would be placed on an unpaid leave of absence or terminated. Id. The plaintiff alleges that he has a sincerely held religious belief that conflicted with that mandate and says that his exemption was approved. Id.

The plaintiff alleges that the UAW initially told union members that if any member was placed on an unpaid leave of absence because of this policy, "it" would be treated as a lockout under the contract between the UAW and Kohler. Id. at ¶2. The plaintiff that in December 2021, Kohler and the union agreed that union member employees would not be required to comply with the vaccination/PCR testing mandate; he says this agreement was scheduled to take effect January 1, 2022. Id. at ¶3. The plaintiff alleges that on February 22, 2022, the UAW and Kohler signed a memorandum of understanding in which the UAW agreed to allow Kohler to implement the vaccine mandate for union employees. Id. at ¶4. The plaintiff alleges that in March 2022, the UAW told members "about starting PCR weekly testing only for those with religious exemptions/accommodations to Kohler's mandate, and was given a short time to get in any new religious exemptions/accommodations for union member employees." Id. at ¶5.

The plaintiff asserts that beginning on March 21, 2022, Kohler "harassed/coerced union members with religious exemptions/accommodations who didn't test the previous week, every week going forward." Id. at ¶6. The plaintiff alleges that Kohler foremen "harass[ed]/coerc[ed]" exempt employees

2

who hadn't tested the prior week, and that it did so in the presence of other employees, violating their privacy. Id. He alleges that Kohler foremen "denied union representation as per the Weingarten Rights" and told employees that "missing a test was not considered disciplinary, therefore union representation was not needed, and they were simply notifying the employee of a missed test." Id. The plaintiff states that when his foreman questioned him about a missed test, he told the foreman about "the various State, Federal and International laws that were being violated and how PCR tests could be used as a form of vaccination;" he says that he asked for a union representative to be present for the conversation but that the request was denied. Id. The plaintiff asserts that his foreman informed him that missing a PCR test "wasn't considered disciplinary," that no union representative was needed and that the foreman was "only informing [the plaintiff] of missing a PCR test for religiously exempt/accommodated." Id. The plaintiff says that he did not submit to PCR testing "going forward," so each week he and his foreman had this same conversation. Id.

The plaintiff asserts that "when UAW 833 was notified of the Weingarten Rights violations," the union didn't take any action to make sure that union member employees had representation for the meetings between foremen and union employees. Id. at ¶7. He says that "over the previous months up until this time" he had given the UAW "50 pages of information about the laws being violated and evidence to [his] claims about the testing violating the religious exemptions, including the cease-and-desist letter," but the union "representation" told him and others to "just go test." Id.

The plaintiff asserts that on April 15, 2022, Kohler met with union employees who were not complying with the testing requirement. Id. at ¶8. The

plaintiff states that Weingarten rights "were in some instances ignored" with regard to letting an employee choose his/her own representative and schedule the interview when that representative was available. Id. The plaintiff states that Kohler provided two options: either take a test or be placed on an involuntary leave of absence (and potentially lose the job) and not be able to come back to work until the mandate was lifted. Id. The plaintiff says that "[n]o paperwork was ever given for disciplinary action to the employee." Id.

The plaintiff asserts that on the day of the meetings—April 15, 2022—Anna Pitner from human resources and James Nussberger (the foreman supervisor) met with him. Id. He says they refused his "Weingarten Right" to choose his union representative; they had the chief steward represent him. Id. The plaintiff says that in this meeting, he was given the option to either keep his job by taking a PCR test later that day, or work only the next night, after which his badge would be "turned off" on April 17, 2022. Id. He says that the second option could possibly result in his losing his job and being placed on involuntary leave until he complied or the testing mandate was lifted. Id. The plaintiff says that he provided "50 pages of exactly what was given to [his] Foreman, to HR and the Foreman Supervisor," including a cease-and-desist letter. Id. The plaintiff alleges that his exemption "said that putting toxic substances in [his] body was against [his] deeply held religious belief," and that he "gave papers" demonstrating that the testing contained toxic substances "with the potential to vaccinate," which contradicted the exemption that Kohler had granted him. Id.

The plaintiff alleges that on April 17, 2022, his badge was "turned off" and he was unable to work that night and going forward. Id. He states that Kohler ended the testing mandate on May 31, 2022, which allowed any union

4

employees on an involuntary leave to absence to return to work. Id. at ¶9. But the plaintiff alleges that Kohler "gave [his] position away" while he was "locked out," and so he had to take a new position. Id.

The plaintiff appears to have filed complaints with the Equal Opportunity Employment Commission against Kohler and the union; he says that the EEOC issued notice of right to sue letters in both actions. Id. at 1. He alleges that he "viewed" the EEOC's notice of right to sue for his charge against Kohler on June 12, 2023. Id. However, the notice of right to sue letter the plaintiff attached to his original complaint is dated May 17, 2023. Dkt. No. 1-1 at 2. He alleges that the EEOC issued a notice of right to sue for his charge against UAW on September 26, 2023. Dkt. No. 2 at 1. The plaintiff says that when he filed for Wisconsin unemployment, "they stated that [he] wasn't considered to be on an involuntary leave of absence since Kohler never gave papers stating such." Id. at ¶8. He says that the unemployment agency stated that he was considered "discharged" without any disciplinary action and that he got unemployment benefits. Id.

The plaintiff does not explicitly list any claims in his complaint. Under the heading "Religious discrimination complaint," he asserts that "Kohler simply recategorized the protected class of religion (under Title VII of the Civil Rights Act) to vaccinated/not vaccinated, to disguise their blatant disregard of the protected class." Id. at 1, ¶1.[1] He states that Kohler created new employee badges with a green square around the photograph to distinguish "the protected class from the other employees." Id. at 2, ¶2. He argues that the

---

[1] The plaintiff lists numbered paragraphs 1-5 under "Religious discrimination complaint" on pages 1 and 2 of the amended complaint, then begins at paragraph 1 again under the heading "General facts" on page 2. He begins with another paragraph 1 under the heading "Request for relief" on page 3.

defendants violated the discrimination provisions of the contract between Kohler and the UAW. Id. at 2, ¶3. He also asserts that Kohler violated employees' privacy rights and other "civil and criminal" laws, including 29 C.F.R. §1605.2 (reasonable accommodations for religious beliefs) and 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(I-III) (authorization for medical products for use in emergencies). Id. at 2, ¶¶4-5.

In his request for relief, the plaintiff demands that the defendants cease all activities that violate Title VII of the Civil Rights Act and that the UAW committee responsible for the alleged violations be removed from their positions. Id. at 3–4, ¶¶1-2. He seeks punitive damages, the value of lost wages and health benefits and the restoration of union seniority for all affected employees. Id. at 4, ¶¶3-4. He also asks for an incentive award for himself. Id. at 4, ¶6.

B.     Procedural Background

1.     *Kohler's Motion to Dismiss (Dkt. No. 6)*

On December 20, 2023, Kohler filed a motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the complaint fails to state a claim for religious discrimination because it lacks factual allegations identifying the plaintiff's sincerely held religious belief. Dkt. No. 7 at 4. Kohler argues that the plaintiff has failed to allege "either an observance or practice that is religious in nature or that his refusal to be tested for COVID-19 is based on a sincerely held religious belief." Id. at 5. Although the plaintiff states that he "sincerely hold[s] a religious belief that conflicts with Kohler's vaccine mandate," Kohler argues that that assertion is too conclusory and does not identify what the plaintiff's religious belief actually is. Id. at 6. Kohler argues that other courts in this circuit have rejected vague statements

6

about wanting to avoid "toxic substances" or "harm" to the body as being medical concerns, not religious beliefs. Id. at 6–7 (citing Passarella v. Aspirus, Inc., Case No. 22-CV-287, 2023 WL 2455681 (W.D. Wis. Mar. 10, 2023); Guthrie-Wilson v. Cook County, Case No. 23-CV-362, 2023 WL 8372043 (N.D. Ill. Dec. 4, 2023)).

Kohler concedes that it granted the plaintiff a religious exemption to the vaccination requirement but argues that that exemption did not create a "blanket exemption" that also applied to the testing requirement; it also argues that the exemption did not constitute an admission that the plaintiff has a protectable religious belief. Id. at 7–8 (citing Passarella, 2023 WL 2455681 at *6–7). Kohler contends that other courts have distinguished between religious beliefs against vaccination and claimed beliefs against COVID-19 testing, finding that the plaintiff needed to explain how testing itself would violate his religious beliefs. Id. at 8 (citing Kiel v. Mayo Clinic Health Sys. Se. Minnesota, Case No. CV 22-1319, 2023 WL 5000255, at *9–10 (D. Minn. Aug. 4, 2023)).

To the extent that the plaintiff brings claims other than a religious discrimination claim, Kohler argues that the court must dismiss those. Id. at 4 n.2. Kohler argues that it is not a covered entity under the Health Insurance Portability and Accountability Act (HIPAA), so the plaintiff cannot bring a privacy-related claim under that statute. Id. Kohler argues that the court must dismiss the plaintiff's purported claim under 21 U.S.C. §360bbb-3 of the Federal Food, Drug, and Cosmetic Act as inapplicable to an employment discrimination case. Id. Kohler argues that any violation under the National Labor Relations Act is time-barred by the six-month statute of limitation. Id. (citing 29 U.S.C. §160(b)).

2. *The UAW's Motion to Dismiss (Dkt. No. 11)*

On December 21, 2023, the UAW filed a motion to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6) because (1) the plaintiff does not allege enough facts against the UAW to state a claim, (2) any claim against the UAW implicating the duty of fair representation under the Labor Management Relations Act (LMRA) is untimely, (3) the plaintiff did not exhaust contractual remedies for any LMRA claim against the UAW and (4) a self-represented plaintiff cannot bring a class action. Dkt. No. 12 at 2.

First, the UAW argues that the plaintiff has not stated a claim for religious discrimination as to the UAW. According to the UAW, Title VII applies to a union only in its role as the employees' agent in bargaining for and implementing collective bargaining agreements (CBA). Id. at 5 (citing Maalik v. Int'l Union of Elevator Constructors, Local 2, 437 F.3d 650, 652 (7th Cir. 2006)). The UAW argues that the plaintiff must show that Kohler breached the CBA, that the UAW breached its duty of fair representation to the plaintiff and that there was evidence of discriminatory animus. Id. at 6 (citing Greenslade v. Chi. Sun-Times, Inc., 112 F.3d 853, 866 (7th Cir. 1997)). The UAW contends that the plaintiff has not alleged any facts supporting any of these three elements, so his claim must fail. Id. at 6–7.

The UAW contends that the plaintiff has not pled an underlying claim of religious discrimination based on his objections to vaccination and testing. Id. at 7. The union argues that "[m]ultiple federal district courts and at least one circuit court have held that objections to testing are not religious objections" and cannot form the basis for religious discrimination claim. Id. at 8–10 (collecting cases).

8

Turning to the duty of fair representation, the UAW argues that the plaintiff has not stated a claim because the complaint is untimely, the plaintiff did not exhaust contractual remedies and the UAW did not breach the duty of fair representation as a matter of law. Id. at 11. According to the UAW, the plaintiff had six months to bring a claim under the LMRA; the UAW argues that based on the allegations in the complaint, that means that the plaintiff needed to file his complaint by December 1, 2022, but he did not file the case until September 2023. Id. at 12. The UAW argues that the plaintiff also was required to exhaust the grievance and arbitration provisions in the UAW-Kohler CBA before filing a lawsuit, which he failed to do. Id. The union argues that the plaintiff has not pled that the UAW violated the CBA because he has not stated a religious discrimination claim. Id. at 13. The UAW contends that the fact that the plaintiff was not satisfied with the testing requirement that the UAW and Kohler agreed to does not mean that the UAW breached its duty to the bargaining unit. Id. at 13–14. The UAW also argues that the plaintiff cannot bring this case as a class action because he is representing himself and cannot represent others in court. Id. at 15–16.

### 3. Plaintiff's "Objection to Hearsay," Supplemental Complaint and Affidavits (Dkt. Nos. 15–18)

The plaintiff did not file an opposition brief to either defendant's motion within twenty-one days (as required by this court's Civil Local Rule 7(b)). Instead, on January 22, 2024, the court received from the plaintiff a document titled "Plaintiff's Objection to Hearsay." Dkt. No. 15. The document raises several objections to the defendants' filings on the grounds that "attorneys can't be a witness" and "statements of counsel in brief or oral argument are not allowed." Id. at 1–2. The plaintiff seems to argue that courts cannot limit law practice to members of the bar and that the bar itself is an unlawful monopoly

9

that violates various statutes and constitutional provisions. Id. at 2–4. The plaintiff raises some substantive arguments in response to the defendants' motions, then concludes his filing by stating that he "move[s] for summary judgment against the defendants." Id. at 4–5.

On January 22, 2024, the court received from the plaintiff a document that was docketed by the clerk's office as a "supplement" to the amended complaint. Dkt. No. 16. The document appears to be a second amended complaint and several pages of supporting exhibits. The plaintiff did not file a motion asking permission to file a second amended complaint. The court then received from the plaintiff two affidavits from other Kohler employees who objected to the company's weekly testing requirement for religious reasons. Dkt. Nos. 17, 18.

### 4. Kohler's Reply Brief (Dkt. No. 20)

On February 5, 2024, Kohler filed a reply brief in support of its motion to dismiss. Dkt. No. 20. Kohler argues that the plaintiff's filings are untimely and that the court should not consider them. Id. at 1–2. Kohler also argues that the plaintiff's response does not explain his religious beliefs or otherwise establish why the court should not dismiss his complaint for failing to state a claim. Id. at 2–3.

### 5. Plaintiff's "Reply in support of Objection to Hearsay and Motion for Default Judgement" (Dkt. No. 21)

On February 22, 2024, the court received from the plaintiff a document titled "Reply in support of Objection to Hearsay and Motion for Default Judgment." Dkt. No. 21. The plaintiff explains that the affidavits he submitted were intended to be produced in discovery and were sent to the court "prematurely." Id. at 1. He states that he served the defendants with the summons and complaint on December 4, 2023 and asserts that the defendants

10

did not file a response within twenty-one days of that date. Id. The plaintiff states that he filed his affidavit and objection to hearsay and a motion for default judgment based on the lack of a timely response from the defendants. Id. Prior to the court receiving this document from the plaintiff on February 22, 2024, the court had not received a motion for default judgment from the plaintiff.

### 6. *Kohler's Surreply and the Plaintiff's Response (Dkt. Nos. 22–23)*

On March 22, 2024, Kohler filed a surreply in support of its motion to dismiss, addressing the plaintiff's request for default judgment. Dkt. No. 22. Kohler states that it filed its motion to dismiss within twenty-one days of being served with the summons and complaint, so it is not in default. Id. at 1. On April 22, 2023, the court received from the plaintiff a "response to Attorney's Surreply," arguing that default judgment is proper because the defendants have "never actually responded." Dkt. No. 23 at 1. The plaintiff contends that "all the statements" made by attorneys in this case are "invalid" "per the Supreme Court" because an attorney is "not allowed to make statements of counsel in brief or in oral argument, nor make motions to dismiss." Id. The plaintiff asks the court to increase the amount of default judgment in his favor because of the defendants' "blatant ignorance" and violations of law. Id. at 2.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to assert by motion that the complaint fails to state a claim upon which a federal court can grant relief. "A Rule 12(b)(6) motion tests 'the legal sufficiency of the complaint,' as measured against the standards of Rule 8(a)." Gunn v. Cont'l Cas. Co., 968 F.3d 802, 806 (7th Cir. 2020) (quoting Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 526 (7th Cir. 2015)). A complaint

11

need not include detailed factual allegations, but it must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In ruling on a Rule 12(b)(6) motion, the court takes "all the factual allegations in the complaint as true," Ashcroft v. Iqbal, 556 U.S. 662 (2009), and draws all reasonable inferences in the plaintiff's favor, Roberts v. City of Chicago, 817 F.3d 561, 564 (7th Cir. 2016).

## III.  Analysis

### A.  The Parties' Filings

The court will first address the parties' filings, so that the parties understand the filings the court has considered when ruling on the motions to dismiss. To the extent that the plaintiff intended his "objection to hearsay" document (Dkt. No. 15) to be a brief in opposition to the defendants' motions to dismiss, the court has not considered it. The court received the defendants' motions to dismiss on December 20, 2023 (Kohler) and December 21, 2023 (UAW 833). Under this court's civil local rules, the plaintiff's opposition briefs were due twenty-one days later—that is, by January 10, 2024 (Kohler) and January 11, 2024 (UAW 833). Civil L.R. 7(b). The clerk's office received the plaintiff's "objection to hearsay" on January 22, 2024. The document itself was signed and notarized on January 16, 2024—six days after the plaintiff's opposition to the Kohler motion was due and five days after his opposition to the UAW motion was due. Dkt. No. 15 at 6.

Although federal courts are required to liberally construe a self-represented plaintiff's filings, "pro se litigants are not entitled to a general

12

dispensation from the rules of procedure or court imposed deadlines." Jones v. Phipps, 39 F.3d 158, 163 (7th Cir. 1994). And "a court has discretion to enforce its local rules, even against a pro se litigant." Turner v. Cox, 569 F. App'x. 463, 467 (7th Cir. 2014) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)). Because the plaintiff did not file his opposition briefs in time or ask the court for an extension of time to file them, the court will treat the defendants' motions as unopposed.

If the plaintiff intended the "objection to hearsay" document to be a motion for summary judgment, the court has not considered it because it does not comply with the court's local rules for summary judgment motions. The plaintiff's filing does not comply with the Federal Rules of Civil Procedure or this court's local rules. Fed. R. Civ. P. 56 governs motions for summary judgment. It allows a party to move for summary judgment, "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." F. R. Civ. P. 56(a). For a court to grant summary judgment in favor of a moving party, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." This court's Civil L.R. 56(b)(1) states that a party moving for summary judgment must file a memorandum of law, a "statement setting forth any material facts to which all parties have stipulated," "a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law" and "any affidavits, declarations, and other materials referred to in Fed. R. Civ. P. 56(c)."

The plaintiff's "objection to hearsay" does not comply with any of these requirements. The document does not identify the claims on which the plaintiff

13

seeks summary judgment. It does not provide any evidence showing that there is no genuine dispute as to any material fact. The law the plaintiff cites does not relate to the claims he raised in the amended complaint. The plaintiff has provided no proposed statement of material fact, no statement of stipulated facts and no affidavits, declarations or other evidence. The only mention of "summary judgment" in the six-page, single-spaced document is the last sentence on page 5, which states, "I move for summary judgment against the defendants." Dkt. No. 15 at 5. Again, even a self-represented litigant must follow the federal and local rules. The court will not construe the plaintiff's "hearsay objection" as a motion for summary judgment.

The court has not considered the plaintiff's January 16, 2024 "supplement" (Dkt. No. 16) (which appears to be intended as a second amended complaint) because he did not asks the court's permission to file it, as required by the Federal Rules of Civil Procedure and this court's local rules. Under Fed. R. Civ. P. 15(a)(1), a party may amend a pleading one time as a matter of course and without leave of court. Otherwise, the party may amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The plaintiff already has filed one amended complaint, so he has used his one opportunity to amend his complaint "as a matter of course" and without leave of court. Further amendments require the court's permission. This court's Civil L.R. 15(b) requires a party seeking to amend a pleading to file a motion "stat[ing] specifically what changes are sought" and to include the proposed amended pleading as an attachment to the motion for leave to amend. The plaintiff must follow the Federal Rules of Civil Procedure and this court's local rules if he wants to file another amended complaint, and he has

14

not done so. The court has not considered the proposed second amended complaint or its attachments.

The court also has not considered the plaintiff's affidavits when ruling on the motions to dismiss because he did not timely file them. While "a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove," Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012), the court received the affidavits on January 30, 2024 and February 1, 2024, weeks after the January 10 and January 11, 2024 deadlines to file materials in opposition to the motions to dismiss.

Turning to the plaintiff's "Reply in support of Objection to Hearsay and Motion for Default Judgment," dkt. no. 21, the court has construed this document as a motion for default judgment. To the extent that the plaintiff intended it to be a brief in further support of the plaintiff's "objection to hearsay"—his response to the defendants' motions to dismiss—it is improper. This court's local rules provide for a three-step process in briefing motions: (1) the party who filed the motion may file an opening brief in support of the motion, (2) the party opposing the motion may file an opposition brief and (3) the party who filed the motion may file a reply brief in support of the motion. Civil L.R. 7(a)–(c). If the non-moving party wishes to file a "sur-reply"—which court should allow only for "valid reasons, such as when the movant raises ne arguments in a reply brief," Meraz-Camacho v. United States, 417 F. App'x 558, 559 (7th Cir. 2011) (citations omitted)—the party must request leave of court to file it. Civil L.R. 7(i). The plaintiff did not request leave of court to file a sur-reply, so the court has not considered the filing at Dkt. No. 21 to the extent

that the plaintiff meant it to be a sur-reply in opposition to the defendants'
motions to dismiss.

For the same reasons, the court has not considered Kohler's filing at Dkt.
No. 22 to the extent that Kohler meant it to be a sur-sur-reply or the plaintiff's
filing at Dkt. No. 23 to the extent that the plaintiff meant it to be a sur-sur-sur-
reply to the original motions to dismiss. The court also has not considered
these last two briefs as part of the parties' briefing on the plaintiff's motion for
default judgment because neither of them were timely filed. Kohler's opposition
was filed thirty days after the plaintiff's motion for default judgment, and the
court received the plaintiff's reply thirty days after that; the court's civil local
rules state that these briefs should have been filed within twenty-one and
fourteen days, respectively, of the prior filing. Civil L.R. 7(b), (c).

To sum up, the court has considered the following when making its
rulings: the amended complaint, dkt. no. 2; Kohler's opening brief in support of
its motion to dismiss, dkt. no. 7; the UAW's opening brief in support of its
motion to dismiss, dkt. no. 12; and the plaintiff's "reply in support of objection
to hearsay and motion for default judgment" (construed as a motion for default
judgment *only*), dkt. no. 21. The court will begin with the plaintiff's motion for
default judgment.

B.    Default Judgment

There are two main deficiencies with the plaintiff's motion for default
judgment. First, the plaintiff did not follow the proper procedure for seeking a
default judgment. Federal Rule of Civil Procedure 55 describes a two-step
process a party must follow to obtain a default judgment. A party first must
seek an entry of default based on the opposing party's failure to plead or
otherwise defend. Fed. R. Civ. P. 55(a). This means that the court must assure

16

itself that the defendant was aware of the lawsuit and still did not respond. After the Clerk of Court enters default, the plaintiff may file a motion for default judgment. Fed. R. Civ. P. 55(b). The plaintiff never filed a request asking the clerk to enter default, and the clerk never has entered default. The plaintiff has not accomplished the first step of the two-step process, so the court cannot grant default judgment in his favor.

Even if the plaintiff had asked the clerk to enter default, the clerk would have had no basis for doing so. The defendants are not in default. Fed. R. Civ. P. 12(a) requires a defendant to "serv[e] a responsive pleading" to the complaint. An "answer" is one kind of responsive pleading. Another kind of responsive pleading is a motion to dismiss. Rule 55(a) requires the Clerk of Court to enter default "[w]hen a party against whom a judgment . . . is sought has failed to plead *or otherwise defend* . . . ." Filing a motion to dismiss is considered "otherwise defend[ing]" the suit under Rule 55. Cannon v. Washington, 321 F. App'x 501, 503 (7th Cir. 2009) (recognizing that defendants defend the suit for purposes of Rule 55 when they file a motion to dismiss). The defendants timely "otherwise defended" by timely filing their "responsive pleadings"—their motions to dismiss.

The plaintiff asserts that the defendants never have responded to the complaint because attorneys have filed papers on behalf of the defendants. Contrary to the plaintiff's arguments, unless a party is representing himself, that party *must* be represented in litigation by an attorney admitted to practice in this court. General L.R. 83(b) ("Unless appearing pro se subject to the limitations in General L.R. 83(e), all parties to proceedings in this Court must appear by an attorney admitted to practice in this Court."). The Seventh Circuit has held that legal entities such as corporations may not represent themselves

17

in federal court; they must be represented by legal counsel. <u>1756 W. Lake St.</u> <u>LLC v. Am. Chartered Bank</u>, 787 F.3d 383, 385 (7th Cir. 2015). The defendants are legal entities, not people, and cannot proceed represent themselves, so they must be represented by legal counsel. The motions to dismiss are valid responsive pleadings. The court will deny the plaintiff's motion for default judgment.

C.    <u>Class Action Claims</u>

The plaintiff titles his amended complaint as a "Class Action Complaint for Employment Discrimination." Dkt. No. 2 at 1. He seeks relief on behalf of other Kohler employees who were placed on a leave of absence or discharged due to the company's testing mandate. <u>Id.</u> at 4. But because the plaintiff is representing himself, he cannot represent a class. An *individual* may represent himself in federal court litigation, or he may be represented by counsel. <u>Lewis</u> <u>v. Lenc-Smith Mfg. Co.</u>, 784 F.2d 829, 830 (7th Cir. 1986). But self-represented plaintiffs cannot represent others or bring class action suits. <u>See</u> <u>Lawrence v.</u> <u>Sec'y of State</u>, 467 F. App'x 523, 525 (7th Cir. 2012); <u>Jagla v. LaSalle Bank</u>, No. Civ. A. 05 C 6460, 2006 WL 1005728, at *4 (N.D. Ill. Apr. 12, 2006) (explaining that courts have "uniformly refused to certify class actions brought by *pro se* plaintiffs"). The court will dismiss the plaintiff's class action claims with prejudice.

D.    <u>Claims Against Kohler</u>

1.    *Religious Discrimination*

The amended complaint alleges that Kohler discriminated against the plaintiff because of his religion. Dkt. No. 2 at 1–2. It alleges that Kohler "recategorized the protected class of religion . . . to vaccinated/not vaccinated," that Kohler required employees to wear badges identifying their vaccination

18

status and that Kohler only required unvaccinated employees with religious exemptions to take weekly PCR tests. Id. at 1, ¶1.

"Title VII prohibits employers from discriminating against employees and job applicants based on their religion." Adeyeye v. Heartland Sweeteners, LLC, 721 F.3d 444, 448 (7th Cir. 2013) (citing 42 U.S.C. §2000e–2(a)). "To establish a prima facie case of religious discrimination, a plaintiff must show: (1) that a bona fide religious observance or practice conflicts with an employment requirement; (2) that the plaintiff called the religious observance or practice to [his] employer's attention; and (3) that the religious observance or practice was the basis for an adverse employment decision." Baumgartner v. City of Chicago, Case No. 24 C 1029, 2024 WL 5107285, at *3 (N.D. Ill. Dec. 13, 2024) (citing Porter v. City of Chicago, 700 F.3d 944, 951 (7th Cir. 2012)). "There are three factors to consider when determining whether a belief is in fact religious for purposes of Title VII: (1) the belief necessitating the accommodation must actually be religious, (2) that religious belief must be sincerely held, and (3) accommodation of the employee's sincerely held religious beliefs must not impose an undue hardship on the employer." Adeyeye, 721 F.3d at 448. A belief is religious if it "occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God." Id. (quoting United States v. Seeger, 380 U.S. 163, 165–66 (1965)). Such beliefs "involve[ ] matters of the afterlife, spirituality, or the soul, among other possibilities." Id. (citation omitted).

Kohler argues that the plaintiff has not established a *prima facie* case of religious discrimination because he "has not pled either an observance or practice that is religious in nature or that his refusal to be tested for COVID-19 is based on a sincerely held religious belief." Dkt. No. 7 at 5. The amended complaint alleges that the plaintiff "sincerely hold[s] a religious belief that

19

conflicts with Kohler's vaccine mandate." Dkt. No. 2 at 2. It says that "putting toxic substances in [the plaintiff's] body was against [his] deeply held religious belief." Id. at 3. It asserts that PCR tests "could be used as a form of vaccination" and "contain[ ] toxic substances with the potential to vaccinate," so the testing requirement also violated the plaintiff's religious belief against vaccination. Id. at 2–3. But the plaintiff has not identified his religion or explained how "toxic substances" and vaccination violate his religious beliefs. He has not mentioned God or faith or spirituality. The plaintiff has not "allege[d] facts plausibly permitting an inference that some 'aspect[]' of the request is based on [his] 'religious observance and practice' or 'belief.'" Passarella v. Aspirus, Inc., 108 F.4th 1005, 1009 (7th Cir. 2024) (citing 42 U.S.C. §2000e(j). He has not shown a connection between his opposition to vaccines and testing "and a specific religious belief or practice." Snyder v. Chi. Transit Auth., Case No. 22 CV 6086, 2025 WL 1725158, at *4 (N.D. Ill. June 20, 2025).

Not only has the plaintiff insufficiently alleged the existence of a belief that is religious in nature, but he has also not articulated how his beliefs were violated by Kohler's COVID testing requirement. The Seventh Circuit recently addressed a similar claim where an employee who received a religious exemption from a vaccination requirement then continued to oppose the employer's requirement that she take weekly tests. Jackson v. Methodist Health Servs. Corp., 121 F.4th 1122 (7th Cir. 2024). In Jackson, the Seventh Circuit explained:

> Jackson has identified no objection to testing that is grounded in her religious beliefs. She opposes the testing requirement, yes, but she cites no religious tenet that is at odds with the testing requirement and no religious practice with which testing would interfere. Jackson has alleged that the testing requirement offends

20

her "moral conscience" because, in her view, asymptomatic testing is medically unnecessary and effectively singles her out for discriminatory and arbitrary treatment based on her healthcare choices—including in particular her decision to opt out of vaccination on religious grounds . . . . [W]hat matters for purposes of Title VII is whether the testing requirement burdens Jackson's religious beliefs and practices, and in neither her complaint nor her briefs has Jackson attempted to tie the testing requirement to any particular religious belief or practice.

Id. at 1126–27. See also Plotkin v. UChicago Argonne LLC, Case No. 23-CV-3035, 2025 WL 1114648 (N.D. Ill. Apr. 15, 2025) (granting motion to dismiss religious discrimination complaint because plaintiff did not articulate how COVID testing requirement violated his beliefs that his body was a "sacred vessel" he must keep pure).

Because the plaintiff has not pled the existence of a sincerely held religious belief that would be violated by taking a weekly COVID test, the court will grant Kohler's motion to dismiss the plaintiff's religious discrimination claim.

### 2. *Violation of Collective Bargaining Agreement*

The plaintiff alleges that the testing requirement violated the antidiscrimination provision of the Kohler-UAW CBA. Dkt. No. 2 at 2, ¶3. Neither party has provided the court with the text of the provision at issue, so the court cannot determine whether the plaintiff has sufficiently pled that Kohler's actions violated the provision. Regardless, "[u]nion members, before they may bring suit against their employer under section 201 of the LMRA for breach of a collective bargaining agreement, ordinarily are required to exhaust whatever private remedies are available to address their grievances, including intra-union remedies." Bell v. DaimlerChrysler Corp., 547 F.3d 796, 802-03 (7th Cir. 2008). The amended complaint does not state whether the plaintiff filed a grievance with the union or otherwise attempted to exhaust his private

21

or intra-union remedies before filing this lawsuit. Nor does the amended complaint allege that any exceptions to the exhaustion requirement apply. See Roman v. United States Postal Service, 821 F.2d 382, 388 (7th Cir. 1987) (identifying three exceptions to exhaustion requirement).

Further, a claim for breach of a CBA is subject to a six-month statute of limitations. DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 155 (1983). A claim accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]." Metz v. Tootsie Roll Industries, Inc., 715 F.2d 299, 304 (7th Cir. 1983) (quoting Hungerford v. United States, 307 F.2d 99, 102 (9th Cir. 1962)). The plaintiff alleges that he "had to take a new position" when Kohler ended its testing requirement on May 31, 2022. Dkt. No. 2 at 3, ¶9. Six months from that date was December 1, 2022; the plaintiff did not file his complaint in this lawsuit until September 7, 2023. The plaintiff's cause of action may have accrued even earlier, on April 15, 2022, when Kohler informed him that he would be placed on a leave of absence. In any event, the plaintiff's claim that Kohler violated the CBA is untimely. Although a plaintiff need not anticipate affirmative defenses like the statute of limitations in his complaint, "[a] complaint that on its face reveals that the plaintiff's claim is barred by a statute of limitations . . . can be dismissed on a motion to dismiss." Tregenza v. Great Am. Commc'ns Co., 12 F.3d 717, 718–19 (7th Cir. 1993). The court will dismiss the plaintiff's claim for breach of the CBA.

####    3.    *Other Claims*

The plaintiff also asserts that Kohler "violated privacy rights by speaking to employees not in private about medical testing" and that it "violated various other State, Federal and International laws both civil and criminal[,]

22

"[i]ncluding, but not limited to" 29 C.F.R. §1605.2 (reasonable accommodations for religious beliefs) and 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(I-III) (authorization for medical products for use in emergencies). Dkt. No. 2 at 2, ¶¶4, 5. The plaintiff has not stated a claim on any of these grounds.

The court does not know what the amended complaint means when it says that Kohler "violated privacy rights." The amended complaint does not identify a law that prohibits employers from discussing medical testing in the presence of multiple employees. Similarly, the amended complaint's assertion that Kohler violated "various other" laws is insufficient. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This requirement is necessary to give the defendant fair notice of the claims the plaintiff is making so that it can prepare its defenses accordingly. "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." U.S. *ex rel.* Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003). The court and Kohler should not be required to intuit what claims the plaintiff is trying to make. The court will dismiss the plaintiff's "privacy" claim and his unspecified claims for violations of "various other" laws because they are not sufficiently clear to state a claim.

The two other statutes the plaintiff identifies fare no better. There is no private right of action under 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(I-III). This provision of the Food, Drug, and Cosmetic Act (FDCA) authorizes medical products for use in emergencies. 21 U.S.C. §360bbb-3. Section 310 of the FDCA states that all proceedings to enforce the FDCA "shall be by and in the name of the United States." 21 U.S.C. §337(a). The Supreme Court has clarified that "[p]rivate parties may not bring enforcement suits" and that the United

23

States has "nearly exclusive enforcement authority" under the FDCA. <u>POM Wonderful LLC v. Coca-Cola Co.</u>, 573 U.S. 102, 109 (2014). The court will dismiss this claim with prejudice.

Section 1605.2 of 29 C.F.R. "clarifies the obligation imposed by Title VII . . . to accommodate the religious practices of employees." If the plaintiff means to claim that Kohler failed to accommodate his religious beliefs, he must bring that claim under Title VII itself, not the federal regulation interpreting Title VII. Even if the plaintiff had properly brought this claim, the amended complaint does not state a claim against Kohler for failure to accommodate the plaintiff's religious beliefs because, as the court has explained, the amended complaint does not plead the existence of a sincerely held religious belief that Kohler would violate by making the plaintiff take a weekly COVID test. The court will dismiss this claim.

E.     <u>Claims Against the UAW</u>

Although the plaintiff names UAW 833 as a defendant in the amended complaint, he has not explicitly stated any claims against the UAW. At most, the plaintiff alleges that he presented his objections to the testing requirement to the UAW, but the UAW told him to "just go test." Dkt. No. 2 at 3. He also claims that the UAW took no action regarding Kohler's alleged violations of the plaintiff's Weingarten rights.[2] <u>Id.</u> If the court construes these allegations as a claim that the UAW breached its duty of fair representation, the claim fails. As

---

[2] "[U]nion employees have the right . . . to the presence of a union representative at investigatory interviews that could lead to the employee's discipline." <u>N.L.R.B. v. Weingarten</u>, 420 U.S. 251, 260-61 (1975). "An employer violates an employee's <i>Weingarten</i> rights when the employer refuses the employee's request for a union representative at such an investigatory interview." <u>Internation Union of Operating Engineers, Local 150, AFL-CIO v. National Labor Relations Board</u>, 109 F.4th 905, 915 (7th Cir. 2024) (citing <u>Weingarten</u>, 420 U.S. at 262).

the court has explained, the plaintiff needed to exhaust the grievance and arbitration procedures in the UAW-Kohler CBA before filing a lawsuit. He has not pled that he has done so. A claim for breach of the duty of fair representation also is subject to the six-month statute of limitations. DelCostello, 462 U.S. at 155. The court will dismiss the plaintiff's claims against the UAW.

## IV.    Leave to Amend

Although district courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is certain' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion, 786 F.3d at 519–20). "District Courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." McCoy v. Iberdrola Renewables, Inc., 760 F.3d 674, 685 (7th Cir. 2014) (quoting Gandhi v. Sitara Cap. Mgmt., LLC, 721 F.3d 865, 869 (7th Cir. 2013)). The facts alleged in the amended complaint show that the plaintiff's claims arising out of the collective bargaining agreement are time-barred, so the court finds it is certain that amendment of those claims would be futile.

But it is possible that the plaintiff could allege additional facts sufficient to state a religious discrimination claim against Kohler, and the court will allow him to amend his complaint as to that claim. The plaintiff may bring this claim only on behalf of himself. He cannot bring a class action or any claim on behalf of other people. The complaint must clearly state what the plaintiff's religious beliefs are and how Kohler discriminated against him based on those beliefs or failed to accommodate those beliefs. The plaintiff cannot bring a claim under

the Food, Drug, and Cosmetic Act because there is no private right of action under that statute. The plaintiff cannot bring any claims arising out of the collective bargaining agreement between Kohler and UAW because the limitation period has expired.

Along with this order, the court is sending the plaintiff a blank amended complaint form. He should write the case number for this case—23-cv-1182—in the space where it says "Case Number" on the first page. He should write "Second" above the word Amended at the top of the first page. He may use the lines on pages 2-3 to describe the facts that give rise to his claims against Kohler. If he needs more space, the plaintiff may use **_no more than_** five, double-spaced additional pages to lay out the facts of his claims against Kohler.

The court advises the plaintiff that the second amended complaint will supersede—take the place of—the original and the amended complaints. That means that the second amended complaint must be complete in itself—it must contain all the facts that the plaintiff wants the court to consider. The plaintiff cannot simply say, "Look at my first complaint, or my amended complaint, for further information." See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F3d 1054, 1056-57 (7th Cir. 1998). When a plaintiff files an amended complaint, it is as if the "prior [complaint] is in effect withdrawn as to all matters not restated in the amended pleading[.]" Id. at 1057 (citation omitted). The court will not consider any facts that the plaintiff does not include in the amended complaint.

## V. Conclusion

The court **DENIES** the plaintiff's motion for default judgment. Dkt. No. 21.

26

The court **GRANTS** defendant Kohler's motion to dismiss. Dkt. No. 6.

The court **GRANTS** defendant UAW 833's motion to dismiss. Dkt. No. 11. The court **ORDERS** that the UAW is **DISMISSED WITH PREJUDICE**.

The court **ORDERS** that if the plaintiff wishes to proceed with this case, he must file a second amended complaint that complies with this order in time for the court to *receive* it by the end of the day on **September 5, 2025**. If the court does not receive a second amended complaint by the end of the day on September 5, 2025, it will dismiss this case the next business day without further notice or hearing.

Dated in Milwaukee, Wisconsin this 30th day of July, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**